When he was just 14 years old, Mr. Savory was wrongly convicted of a double murder he did not commit. In fact, that conviction was not set aside until decades later, when he was pardoned by the Governor of Illinois in 2015. The issue in this appeal- The Savory's pardon a full pardon. Yes, for purposes of heck, Your Honor, it was a full pardon. The pleading- Because, you know, I mean, the defendant suggests that it was not based on innocence and that his gun rights were not restored. Your Honor, I- And it- Yeah. I believe it. If it was not a full pardon, would a Section 1983 claim still be barred by heck? I mean- Well, Your Honor- Yeah. Your Honor, to respond to that in a couple respects, first of all, on Apelli's response brief on page 1, they concede that this was a pardon that set aside his conviction, and that is all that heck requires in terms of accrual. As a matter of pleading, this case comes to this court at the motion-to-dismiss stage, and the allegations and the complaint are taken as true. Savory's pardon was a result of having gotten a favorable DNA result that exonerated him. And then prior to his pardon, he had received a commutation from the Governor of Illinois. That's what terminated his parole in 2011. And so the pardon, all it could have done is set aside his conviction. Our contention is that's what it did. Our contention is it's a full pardon, and that is what it's- Why didn't it restore his gun rights? Well, the face of the pardon's actually a bit difficult to read. So the pardon says, you're pardoned of the crimes of which you were convicted. Your conviction is expunged, and that's the language that heck requires. And then it says, pardon with- And then it has this strange extra paragraph that says, pardon with expungement, except for matters of gun rights. It's unclear if that modifies the expungement. It's unclear if that modifies the pardon as a whole. But there's no doubt that that set aside his criminal convictions, at least for purposes of the case in this posture. Do you think that's an issue for a remand? I don't think that it will become the type of factual issue that concerns heck, because what the Supreme Court said in heck, and just to quote the language, in order to recover damages for an allegedly unconstitutional conviction, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, et cetera. And that's what happened to Savory's conviction in 2015, when he received this second grant of executive clemency. The conviction was set aside. It no longer encumbered him. And it's our submission that that's all that's required for heck purposes. Counsel, let me ask you a question. Do you think that this case really, on the statute of limitations grounds, requires a straightforward application of Johnson's versus Winstead, to see which claims were outside of the trial proceedings and which ones were? And under that, some of your claims are going to be barred. Like the claims for the coerced confession and the torture analogy. Right. So I think that the question whether the different types of claims are subject to different accrual rules and the question whether claims tied up with that first conviction or subject to a different accrual rule is answered by Johnson. I don't think, this is an affirmative defense. Obviously, the district court disposed of the whole case at the motion to dismiss stage. In this court, the appellees have not raised any issue about whether, you know, if the principal fair trial claims are timely, other ones are not. So it's our submission that that's an issue for remand. But obviously, there would need to be briefing on both Johnson and its effect on claims related to that first criminal trial that Savory went through because he was convicted in 77 and then 81. And also, about the manual Fourth Amendment claim in the case, which obviously the remand decision just this last month subjected to a different rule in this court. But it's our submission that that's an issue for remand and that there are central fair trial claims in this case. There are due process claims. There's a Fifth Amendment claim concerning that second criminal trial. But still, even if we remanded for the district court to sort out which claims would have accrued at the time of the pardon and which ones may be expired because they were outside of the trial proceedings, would you still agree that Johnson versus Winstead kind of settles this problem, right, because it tells us when to look for accruals. We don't have to worry about DeWalt in that respect because here it's used in the offensive way to overcome what would otherwise be a statute of limitations. Absolutely. And I think all Johnson does is says what the Supreme Court said very clearly in Heck and Wallace and most recently in Manual, and it said, look at these claims categorically. If they're attacking the criminal trial proceedings and the fact of the conviction, they're claims analogous to malicious prosecution. That's the logic of Heck. And those claims, the accrual of those claims is deferred until the conviction is set aside. That logic has absolutely nothing to do with custody. And I would say, I would agree, Your Honor, that Johnson says that categorically Fifth Amendment claims of the type Sabre he has, and he also has due process claims like those at issue in Heck, those claims categorically accrue when the conviction is set aside. I don't think DeWalt, and there's a lot of emphasis on DeWalt and concurring opinions, I don't think DeWalt and Spencer's concurrence and the Heck concurrence really dictate a different result. Of course, the Heck concurrence and the Spencer concurrence were rejected by majority opinions of the Supreme Court in the same cases, which said, you know, quite explicitly, first in Heck, there is no different rule when you are out of custody. Our logic is based on deference to the finality of state criminal judgments and the common law rule that you don't use civil actions to collaterally attack criminal judgments. And then in Spencer, the Supreme Court went further and rejected actually the premise that the district court relied on in this case. In Spencer, the Supreme Court said, responding to the petitioner's argument that his habeas petition wasn't moot, the petitioner argued that the habeas petition couldn't be moot because if it was, he couldn't set aside his conviction and then pursue relief under Section 1983. And the Supreme Court said that that was a great non sequitur unless one believes, as we do not, that a Section 1983 action for damages must always and everywhere be available. Counsel, do you think that DeWalt and Johnson versus Winstead are inconsistent? I mean, not in result, right, because DeWalt deals with the conditions of confinement case, but to the extent that the language, do you think the language is in tension? Not at all. I think that what DeWalt faced was a situation where Heck had been decided, Edwards had been decided. Those cases had both looked at different kinds of damages claims, Heck attacking a conviction, Edwards attacking what seemed to be a condition of custody. And at that point in time, it wasn't clear what the Supreme Court was going to do. And this court very carefully in DeWalt said, because this is an open question, what to do with the conditions of confinement claim, we're going to look at the Spencer concurrence for guidance. We're going to look at what the Supreme Court might do. And it decided that Heck didn't apply to those claims. DeWalt reiterated Heck's rule. DeWalt said, Heck bars attacks on criminal convictions. Heck bars attacks on custody. That's not what we have here. We have a condition of confinement claim. But Heck treated the favorable termination as an element of the cause of action because it analogized it, sorry, to malicious prosecution. And DeWalt doesn't do that. DeWalt drops the position of the concurring justices, which was that it's not an element of the cause of action. So it treats it as a different kind of thing. I think that that difference is explained by the type of action brought, right? So in Heck, the challenge to a conviction, and in Edwards, the challenge to the length of custody implicated issues that are dealt with through federal habeas, right? And so the court looked at those claims and said, these claims are analogous to malicious prosecution. In DeWalt, there wasn't the need to even do that analysis because the claims didn't implicate a conviction and they didn't implicate the length of custody whatsoever. So I think that DeWalt is entirely consistent, as are all the other cases that district court relied upon. And I think Heck sets out the following framework. First, if a plaintiff is attacking an extant criminal conviction, the claim is barred until that's set aside. That's the decision in Johnson. That's this court's decision in Byrd. Second category, if the plaintiff is just attacking custody but not the conviction, so in other words, complaining that an administrative decision held them too long, then they only have to wait until the custody comes to an end. That's this court's decision in Whitfield and its decision also in the manual remand case recently. And then finally, the third category is where it attacks neither a conviction nor the length of custody, and in that case, Heck just doesn't apply at all. And I think this court has recognized that, and that's why DeWalt doesn't control the situation here. Let me ask you about tea leaves in the DeWalt opinion and the decision to overrule some portion of the Anderson opinion, which Anderson looks a lot like this case. Sure. You know, I think in 2000, when the court was looking at that issue, it wasn't clear what was going to happen with conditions of confinement claims. DeWalt was very clear that it was overruling past decisions and circulating the opinion under 40E, only to the extent that those decisions prevented the result that DeWalt was reaching, which is, you know, that conditions of confinement claims aren't affected by Heck. What's interesting is, you know, the Supreme Court soon after that decides the Muhammad case. Muhammad actually reviewed DeWalt and a circuit split about conditions of confinement claims, and Muhammad drops that footnote saying, yeah, we've had this, you know, disagreement. We're not resolving it right now. But what Muhammad shows is that, in affirming the rule of DeWalt, is that no exception to Heck was required in order to reach that rule. It wasn't anything to do with custody. And I think that's shown by DeWalt itself. I mean, DeWalt is not an attack on a conviction. It's a claim brought by a person in custody. That decision simply couldn't have established the rule that the district court said it established in this case. And if there are no further questions, I'd like to reserve some time. All right. Thank you, Mr. Hart. Thank you. For the defendants, Ms. Schroeder. May it please the court. My name is Sarah Schroeder, and I represent the Appalachians in this matter. And this morning, I want to address what I think are the federalism concerns about this court being able to review a 1983 case while conviction still stands. And then I also want to talk about how this is the better rule, the rule that is established in this circuit for plaintiffs, for defendants, and for the courts. And for the remaining arguments. How do you get around the direct language of the court in Heck? When it says, and I'm going to quote, we think the hoary principles of civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments, applies to section 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement. Justice has always applied to actions for malicious prosecution. That, to me, seems to contradict the defendant's position entirely. Your Honor, we feel that Heck is concerning when the plaintiff is in custody. And that the malicious prosecution sort of analogy had to deal with when the plaintiff was in custody. That's when your federalism concerns are at the highest. That's when the state has the highest interest in this prisoner. That they are incarcerated and they are completing their sentence. And that is how Heck. And yet we have footnote 10. And then you have footnote 10. But footnote 10 is pure dictum. And that is, it had no bearing on the actual holding. No, it tells us what the elements are, right? Well, I think footnote 10 doesn't tell the elements. I think it's, I thought footnote 10 mainly referred to saying that it wouldn't relate to a plaintiff who is out of custody. But then after Heck, which we state is sort of like the beginning of this analysis and not the end, you come to Spencer. And you have five Supreme Court justices who come together and state that the Heck bar should not apply to plaintiffs who are out of custody. And then from there you jump to DeWalt v. Carter, which was this circuit, who said they were going to follow that pronouncement. And then specifically overruled. In a condition of confinement case, yeah. Can I ask you, Ms. Schroeder, in this context we have a lot of opinions that say a lot of different things. I don't know that any one opinion is a complete treatise on Heck and all of its ramifications and limitations. But let's focus on what courts have done. Has any circuit court allowed a Section 1983 case challenging a conviction to go forward without either reversal, habeas, or a pardon setting aside the conviction? So I think, Your Honor, the closest case that that's going to be in another circuit would be the Second Circuit in Proventude. And that case, Proventude, it's listed in the brief. And I will get the site for you as soon as I'm done here, Your Honor. But it is listed in the brief. Proventude was a case that the Second Circuit. I don't see that. You were relying, I thought, on Huang versus Johnson from the Second Circuit. Then I apologize, Your Honor. But Proventude is a case out of the Second Circuit that does allow, that ruled that with a still standing conviction, plaintiffs could move forward without the Heck bar with their Section 1983 claims. Now, do you have a citation for that? I do have a citation, I believe, Your Honor. So I don't see it in your brief. If I don't, I will get that citation for you, Your Honor. But that would be the closest in the sort of circuit case, is a Proventude case that in the Second Circuit allowed. I do know how it's spelled. It's P-R-O-V-N. Could you say that again, please? Sure. It's P-R-O-V-E-N-T-U-D. Counsel. T-U-Z, did you say? No, I'm sorry, Your Honor. P-R-O-V-E-N. I have the citation, Your Honor. It's 716F3-715. So maybe this is asking you for what Proventude looked like, but tell me what kind of a claim, or how would Mr. Savory, if he had asserted his claims right after he was released from custody, what would that have looked like? So he could have succeeded. So here's, yes. He probably would have come up against some preclusion issues. And it's definitely something that if the claims had been litigated previously, they would have been precluded. But not all of his claims likely would have been precluded. Any of those claims that were based on new evidence or new facts that had emerged from his previous litigation, those would have been able to move forward. Claims such as fabricated evidence, any claims that he uncovered of witness coercion, those claims would have moved forward if they hadn't been litigated previously. And that is exactly what we are advocating as a rule, that that would allow those types of plaintiffs a direct path to the court. Under Mr. Savory's rule, what he is saying is that, no, those plaintiffs who are released from custody, discover they have some sort of constitutional violation. Which isn't unheard of, that these plaintiffs will learn that there's been a cover up or that there's new evidence that relates to a constitutional injury. He is saying, no, they do not have a path to court. They must now take a left turn and go get some sort of, maybe a pardon from the governor. And they must continue to knock on this governor's door to get a pardon. And if that doesn't work, they're gonna go to the next governor and get a pardon from that governor. And then until they get that, then they can come to court. But under the rule where it says the custody is the determining factor for whether the HECFAR applies, that would allow that type of plaintiff a direct path to this court. And that is the better rule. That's the better rule for the plaintiffs. That's the better rule for this court as well. We were talking- But it isn't the right now, it would seem to me. Where am I wrong if I believe that under HEC, the section 1983 cause of action does not even exist unless, unless the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. Savory could not have brought this claim before the pardon under those words. That is correct, Your Honor, when he was incarcerated. But when he was released from custody under Spencer, under DeWalt, he would have been able to bring those claims. HEC was all about protecting the habeas corpus statute when the federalism sort of concerns are at the highest. And so, I mean, I think that when there's not that tension between the 1983 statute and the habeas statute, when that tension's gone, which happens when the plaintiff is released from custody, the federalism concerns sort of dissipate and the favorable termination rule is not required. I think case in point is that, and even in the habeas statute, there is no prevailing element. In the habeas statute, it says- You know, to me, that he was out of prison is irrelevant. The relevant factor was that his section 1983 claim implied the invalidity of his state court conviction. And he could not bring that challenge until the conviction was abrogated by the pardon. I disagree, Your Honor. I think it is very important that he was released from custody and that he would have been able to bring those claims. Ms. Schroeder, could I ask you again for that citation on proventude? Yes. I would have thought this would have been what you would want to lead with since the plaintiff's reply brief, in essence, challenged you to come forward with such a case. Yes. The site is Proventude versus New York, 750 F 3rd, 121. Okay, that's different than the site you gave me. Did you say 750 F 3rd? 750 F 3rd. Before you said 716 F 3rd. Yes, but I've been looking and searching and it's not there. So you said 750 F 3rd, 121? Yes, but I don't believe... It's P-O-V-E-N-T-U-D. Let's see. While we're waiting on that, can you answer my question about Johnston versus Winstead? I mean, Johnston versus Winstead is two or three months old and it says that these kinds of claims, if they relate to trial proceedings, accrue upon expungement or overturning of a conviction, etc., exactly what Mr. Sabry's position is. So how do you get around that? Because I think that's still in the context of when the plaintiff is in custody. And I think what we're taking from Johnston is there is a need for very clear rules to how these limitations, statute of limitations, apply to these plaintiffs and to these claims as it relates to HEC. And I think Johnston says that, that we need a clear rule. And using custody as the defining point for when these claims accrue provides that clear rule for these limitations. But that's not what Johnston says. Johnston doesn't say that the claims accrue at the release from custody. Johnston said that those claims accrued in this context, some of them run from the trial proceedings themselves. Some of them run from pardon, expungement, etc. But I disagree. I don't think it is in this context. In this context, it's a plaintiff who's released from custody. In Johnston's context, it didn't deal with a plaintiff that had been released from custody. I think that that is the difference here, that it needs to be focused on the plaintiff's status. And the plaintiff's status, whether he's in custody or not, is a determining factor for when accrual begins. And I think that having that very finite point for when accrual would begin, for when the HEC bar would lift, is going to provide this sort of clarity that the courts need in order to determine accrual points for when HEC is involved. And, I mean, even looking at the recent decision in Manuel, where it was determined that unlawful detention due to Fourth Amendment claims would accrue at the term when custody released. This would fall right in line with that and make a very clear, clean rule that 1983 claims accrue at the point when custody ends. Otherwise- Counsel, I'm looking, I have Johnston versus Winstead open right now. And Johnston adopts, reiterates, and relies upon the very same language in HEC that Judge Rovner quoted to you earlier. And it says, claim is successful that necessarily implies the invalidity of the conviction under HEC is neither cognizable nor accrues until the conviction has been overturned. Yes, and I agree, Your Honor, that that is the language. But there's still this matter of the position of the plaintiff. And if the plaintiff is released from custody, that's when it would not apply. That's what it says, this court stated in DeWalt, and specifically when it overruled Anderson. But that is a determining factor for when the HEC bar would or would not apply. Ms. Schroeder, whether the rule you're arguing for is consistent with HEC or the Supreme Court precedent is one set of questions. I'm wondering about the somewhat more pragmatic set of problems. Because while I understand you're saying you think your rule would be more generous to wrongly convicted plaintiffs. It seems to me that in the situation here, if Mr. Savory had brought his claim upon the end of his parole, he would have immediately faced devastatingly powerful claim and issue preclusion defenses. Your response to that implied question a little earlier said, well, maybe there are some claims that would not be barred by that point. That seems to suggest we would wind up splitting wrongful conviction claims. Some of which would arise upon release from custody. Others only after invalidation through, let's say, the post-custody pardon. And it would seem to complicate matters even more than they already are. I think that if the claims are brought, such as in Mr. Savory's case, if they were brought at the time when custody ended, certainly there are going to be preclusion sort of hurdles that are going to have to overcome. And aren't those gone now that the pardon has been issued? You know, that's something that we didn't really look into in the lower courts to see if those preclusion issues would be gone due to the termination of the conviction. But again, even going back to Justice Roedner's sort of beginning part of it, is that we sort of looked at what was before us. And we saw the statute of limitations and that he had missed it. And that we followed the rulings and the opinions of this court and of Spencer's. And we see that at the point of custody is when the heck bar lifts. And he should have brought his claims. And whether he's going to come out to raise judicata, he's going to do that. But it's an equitable doctrine also. So let's also not forget that, that it is an equitable doctrine. And it can be, if the courts see in some sort of extraordinary circumstances to let claims go forward, they can do that. You know, there's never, those doctrines were never meant to prohibit a plaintiff from coming forward when there's new evidence or new facts of constitutional injuries. And I see my time is up, if I may briefly conclude that, you know, we do believe that this rule does uphold the federalism. And it is the best rule for plaintiffs. It provides a direct path for their constitutional injuries once they're released from custody. It's the best rule for these courts. It provides a clean, clear, definitive rule for when these claims accrue. And it's the best rule for defendants, like our appellees, who are 16 retired police officers, three of them who had died before this litigation began, one who died during litigation, and the rest range in age up to 88 years old. The defendants in this position and in the future need a point of finality for when these claims can be brought. Okay. Thank you, Ms. Schroeder. Rebuttal, Mr. Hart. Just a few points in response. First of all, there is no case that has been given to this court that says that you can attack an extant conviction using Section 1983. That should conclude the issue. The first site from the Proviton case that was given was the panel decision. The second was the en banc decision. This issue was discussed, I believe, if I'm recalling it correctly, in the panel decision. And then when the court went en banc, it said, no way, we're not doing this. And I would submit that the courts of appeals aren't free, given what the Supreme Court has said, to make up different rules. As Judge Hamilton pointed out, footnote 10, of heck, said that custody does not matter. That's not dictum because it depends on exactly the same analogy to the common law of torts as the rest of the holding. But even if it was, it's the kind of dictum that the courts of appeals have to follow. On the federalism point, it would be absolutely absurd from the perspective of federalism to allow a Section 1983 claim when federal habeas corpus simply wasn't available. Federal habeas is the exclusive mechanism to be freed from state custody and, at this point in time, for federal review of the constitutionality of state convictions. So custody is a line as far as the availability of habeas is concerned. But what the Supreme Court was saying in Spencer is it's a non-sequitur to then say that custody line means that 1983 is always available when habeas isn't. It would frustrate the habeas regime, which Congress and the Supreme Court has defined very narrowly, to say, if you don't satisfy the strictures of federal habeas, go ahead and file a Section 1983 case seeking injunctive relief from your conviction just because you've been released from prison. And you'll have plenary review in the federal courts under the Federal Rules of Civil Procedure. The federalism concerns that are animating the entire Heck case line are the reason that Savory had to wait until his conviction was set aside to bring this civil suit. We don't use civil suits to attack outstanding criminal judgments. And I want to address what would happen to these claims. There was a lot of discussion of preclusion. Mr. Savory's claims would be precluded, no question. There would be no way for him to bring them. This court said in Evans, once the conviction is set aside, there's no preclusion problem anymore. But even set aside preclusion, there's a serious Rooker-Feldman problem here. What plaintiffs in this position released from custody with an extant conviction, a state conviction, would be asking the lower federal courts to do is give them a different judgment. Rooker-Feldman usually applied to civil cases because there simply aren't criminal attacks under Section 1983. But Rooker-Feldman's logic applies in this circumstance. And so it's not just an issue of preclusion. These claims would be jurisdictionally barred as well. And think of the absurd result for someone in Savory's position. Under the district court rule, he's required to file when he gets out of custody. His claims are jurisdictionally barred and precluded. If he can later seek relief from the state the way he is supposed to, his claims are time barred. Accrual rules, Heck says, and Johnson reiterates, are supposed to be designed so that claims accrue when plaintiffs have the ability to sue. Clearly, the district court's rule leaves all plaintiffs in the situation where they would have barred claims, ultimately. At all times during his wrongful conviction, Mr. Savory had clear law to look at that told him, go get your conviction set aside either through federal habeas, which he tried exhaustively, or state remedies, which he tried exhaustively. Savory followed that law, and he timely filed this suit within two years of the first time that he got that relief. The district court's new rule should be rejected, and this court should reverse. Thank you. Thank you, Mr. Ard. Thank you, Ms. Schroeder. Thanks to all counsel. The case is taken under advisory.